Richard G. Himelrick (004738)
TIFFANY & BOSCO, P.A.
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
Telephone: (602) 255-6000
Facsimile:   (602) 255-0103
rgh@tblaw.com

*Special Master*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| SGD Engineering Limited, an Israeli corporation,<br><br>              Plaintiff,<br><br>vs.<br><br>Lockheed Martin Corporation Incorporated, a Maryland corporation,<br><br>              Defendant. | Case No.: 2:11-cv-2493-DGC<br><br>**Special Master's Report and Recommendation** |

### Table of Contents

1.    Introduction ..................................................................................2

2.    Summary of Findings ....................................................................2

3.    Procedural History.........................................................................4

4.    Lockheed's Privilege Logs............................................................5

5.    Special Master's Suggestions and the Parties' Preliminary Responses.................8

6.    SGD's Objections..........................................................................9

7.    Analysis .......................................................................................10

       A.    SGD's non-privilege objections and concerns.........................10

       B.    Lockheed did not waive its privilege claims............................12

C.    Confidential (in camera) reviews by special master ...............................14

    1.    Document 50 ...................................................................14

    2.    Document 111 .................................................................15

    3.    Document 341 .................................................................16

    4.    Other documents produced for confidential review......................17

D.    Confusion caused by Lockheed's use of *and/or* privilege claims ............18

8.    Lockheed's Fifth Privilege Log Satisfies Rule 26(b)(5) .....................................19

9.    Recommendation...................................................................................19

# Report and Recommendation

## 1.    Introduction

Defendant Lockheed Martin Corporation contracted to build an aircraft pod for Toshiba.  The pod was to house equipment on F-15 military aircraft.  Lockheed subcontracted construction of the pod's external housing and some of the pod's internal equipment to Plaintiff SGD Engineering Ltd.  SGD sued Lockheed for allegedly breaching the subcontract by refusing to pay in full for SGD's work.   Lockheed counterclaimed for lost profits and liquidated damages it incurred to Toshiba because of SGD's allegedly untimely and defective performance.

In connection with the parties' document production, Lockheed served a privilege log.  Lockheed revised the privilege log several times in response to objections and concerns expressed by SGD.  After the parties were unable to resolve their differences over the sufficiency of Lockheed's Fourth Privilege Log, the Court appointed me as a special master to prepare a report and recommendation.  *See* Doc. 64.

## 2.    Summary of Findings

The document production in this case is complex, and the effort required to understand the documents is time consuming.  The controversy concerns not only litigation between the parties but potential litigation between Lockheed and Toshiba. Many of the documents on which SGD has challenged Lockheed's privilege claims seem

to be dual-purpose documents that were prepared in part for business purposes and in part because of anticipated litigation.  Privilege claims on dual-purpose documents can be difficult to resolve.  *See generally United States v. Richey,* 632 F.3d 559, 567-68 (9th Cir. 2011) (discussing dual-purpose documents); *Phillips v. C.R. Bard, Inc*., ___ F. Supp. 2d ___, 2013 WL 1333790, at *7-10, *16-18 (D. Nev. Mar. 29, 2013) (explaining the legal standards for deciding disputes involving dual-purpose documents and finding in camera review needed); EDNA S. EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE 210 (5th ed. Supp. 2012) ("[M]ost of the standards courts apply to determine the primary purpose for production of a document, using concepts such as 'because of' and 'primary motivation,' do not advance the analysis substantially.").

Lockheed's Fifth Privilege Log (Doc. 77, Ex. A) provides reasonable detail for purposes of Fed. R. Civ. P. 26(b)(5).  Lockheed's Log describes the basis for its privilege claims with reasonably specific explanations of why the documents are privileged.  In addition, at my suggestion Lockheed's counsel conducted an e-mail-by-e-mail review to ensure that the documents were privileged and to determine whether parts of the documents could be produced by making redactions.  This resulted in 105 redacted documents being produced.  Lockheed then supplemented its privilege log with declarations from three of its attorneys representing that they had each reviewed all documents involving a privilege objection by SGD.  *See* Doc. 77, Ex. B (attorney declarations).  Each attorney represented that he or she was satisfied that the claims of attorney-client privilege and work-product protection were properly claimed.  *See id.*

Lockheed also supplemented its privilege claims by producing 12 documents for confidential review.  I reviewed these documents and concluded that all claims of attorney-client privilege and work-product protection had been properly made.

Under the circumstances, I am satisfied and find that Lockheed's Fifth Privilege Log—as supplemented by its counsels' declarations and the sample of documents produced for my confidential review—satisfies Rule 26(b)(5).

This does not, however, resolve the privilege dispute.  Even with the supplemental

detail (and assurances that Lockheed's declarations provide), it is not possible to be sure that all of Lockheed's privilege claims are valid. SGD has identified 176 documents for which the document may have been over redacted, identified as work product despite being primarily a business document or communication, or may have been disclosed to a third-party, resulting in waiver. *See* Exhibit A (listing these 176 objections). It is only through in camera review and supplemental detail from Lockheed that SGD's objections can confidently be ruled upon. *Cf. Phillips*, 2013 WL 1333790, at *2, *17-18 (finding that in camera review of a sample of dual-purpose documents was needed).

Given my familiarity with the case, including my review of a sample of the documents, I am skeptical about SGD's objections. But I am not prepared to find on the current record that SGD's objections are without merit. Accordingly, as explained in Part 9, I recommend that a further sample of 20 documents be reviewed in camera. To facilitate the in camera review, I also recommend that Lockheed be ordered to file a supplemental response explaining several issues relevant to the validity of its privilege claims.

## 3.   Procedural History

Shortly after my appointment, I scheduled a telephone conference with the parties. During the conference, the parties summarized their positions and agreed upon a schedule to brief their positions. So that I could better understand the controversy, I ordered the parties to each select five documents listed in the Fourth Privilege Log to be produced for me to confidentially review. *See* Doc. 65. The parties designated the documents as ordered, and Lockheed provided them to me.

On March 22, 2013, SGD filed its opening memorandum. *See* Doc. 66. Lockheed responded on March 27, 2013. *See* Doc. 69.

Lockheed's Response did not address SGD's objections. Instead, Lockheed focused exclusively on what it called a fraudulent document that was attached as Exhibit O to SGD's Opening Memorandum. Lockheed's Response asked that SGD's claims be dismissed and that Lockheed be awarded fees and costs. A few days later, Lockheed

filed a Motion for Sanctions in which it renewed its request for dismissal with fees and costs. *See* Doc. 71.

On April 1, 2013, I filed a Preliminary Report and Recommendation (Doc. 72) in which I recommended that (1) Lockheed's Motion for Sanctions be denied, (2) Lockheed be allowed until April 5, 2013 to file a complete response to SGD's objections, (3) SGD be given until April 10, 2013 to file a reply, and (4) the time for my final report and recommendation be extended to April 17, 2013.

Afterward, the Court entered an order adopting my report and setting a revised schedule for Lockheed's Supplemental Response, SGD's Reply, and my Report. *See* Doc. 73. The Court also denied Lockheed's Motion for Sanctions. *See* Doc. 74.

As ordered, Lockheed filed a Supplemental Response (Doc. 77) and SGD filed its Reply (Doc. 79).

**4.     Lockheed's Privilege Logs**

The volume of documents involved in Lockheed's document production is unclear. In a telephonic conference, Lockheed's counsel stated that 100s of thousands of documents are involved. Whatever the volume, it is large enough that Lockheed hired an outside vendor to organize the documents, identify responsive documents, and segregate privileged documents. The vendor used a keyword search to identify privileged documents. This is common in large-volume document cases. *See, e.g., Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 257-58 (D. Md. 2008).

The vendor listed the privileged documents that were identified through the keyword search in a spreadsheet that Lockheed produced for SGD as Lockheed's First Privilege Log.

It became apparent to both parties that the First Privilege Log was over inclusive. Lockheed's Log included documents that were not privileged as well as documents that were irrelevant. This is not unusual when a keyword search is used. *See id.* at 257 (noting that over-inclusion is to be expected). The parties engaged in discussions that led to Lockheed producing many documents that were initially listed as privileged. On other

documents, Lockheed withdrew its privilege claims but refused to produce the documents because they were irrelevant and not calculated to lead to relevant information.

As the scope of Lockheed's document production expanded and its privilege claims narrowed, Lockheed modified its First Privilege Log in a series of new privilege logs.  When documents were produced for which a privilege had been erroneously claimed, a notation showing that the document had been produced was inserted in place of the privilege objection that had been made.  *See, e.g.,* Lockheed's Fifth Privilege Log nos. 2-42.[1]  Similarly, when Lockheed found documents that were not privileged but were irrelevant and beyond the scope of discovery, Lockheed substituted the following notation for the previous privilege claim:  *Relevance—Not relevant to the instant case*. *See, e.g.,* Fifth Privilege Log nos. 488-506.

Lockheed's Fifth Privilege Log lists 652 documents.  According to SGD's Reply (Doc. 79) and Notice of Errata (Doc. 81), Lockheed has produced 266 of the 653 documents.  (Doc. 79, at 2; Doc. 81 at 1).  That leaves 387 documents unproduced.  As explained below, some of these documents are being withheld for reasons other than a privilege claim.  Of the 266 documents that were produced, SGD states that 105 were produced with redactions.  *See* Doc. 79, at 2.

The parties have referred to the initial spreadsheet and its later versions as the First, Second, Third, Fourth, and Fifth Privilege Logs.  But these documents include more information than a typical privilege log.  Lockheed asserts two privileges—attorney-client privilege and work-product immunity.  In addition to identifying the documents for which these privileges are claimed (and the basis for claiming the privileges), Lockheed's Second, Third, Fourth, and Fifth Privilege Logs include the following information:

- *Produced Documents*.  The Privilege Logs identify documents that were originally identified as privileged but for which privilege

---

[1] The Fifth Privilege Log is attached as Exhibit A to Lockheed's Supplemental Response (Doc. 77).

claims have been withdrawn and the documents produced.  *See, e.g.,* Fifth Privilege Log nos. 2-42.  As mentioned, according to SGD, 266 (about 40%) of the documents listed have been produced.

- *Boeing Proprietary Information*.  This notation identifies documents that Lockheed obtained from Boeing for which Boeing has refused to authorize production.  *See, e.g.,* Fifth Privilege Log nos. 43-49.

- *Toshiba Propriety Information*.  This notation identifies documents that Lockheed obtained from Toshiba that Toshiba has labeled proprietary and marked as not for distribution.  *See id.* nos. 385, 650.[2]

- *Export-Control Information*.  *See, e.g., id.* nos. 225-32.  Lockheed has agreed to produce these documents for SGD's counsel's review at the offices of Lockheed's counsel.  A protective order providing for such review was entered by the Court.  *See* Doc. 22, ¶ 5.

- *LMC Proprietary Information*.  This notation identifies information that Lockheed believes is confidential.  *See, e.g.,* Fifth Privilege Log nos. 49-55.  Lockheed has represented that although this notation appears in its Fifth Privilege Log, no documents have been withheld because the information is confidential.  *See* Doc. 77, at 11-12.  In other words, references to LMC Proprietary Information are informational only.

- *Placeholder Documents*.  These are electronically stored documents that Lockheed has partially produced.  Three placeholder documents have not been produced.  *See* Fifth Privilege Log nos. 355, 388-89.  Lockheed represents that it has been unable to convert these

---

[2] This objection was first made for entry 385 in Lockheed's Third Privilege Log and for entry 650 in Lockheed's Fourth Privilege Log.

electronic documents to a format in which they can be read.  *See* Doc. 77, at 15.  Lockheed has agreed to continue working on a solution and to provide additional information as soon as it is available.  *See id.*

**5.      Special Master's Suggestions and the Parties' Preliminary Responses**

After I was appointed, I issued two memos to counsel in which I made suggestions about how to proceed.  In my first memo, I suggested that Lockheed review the documents that were withheld to determine whether some of Lockheed's privilege claims could be resolved through redactions.  Lockheed filed declarations stating that it had made an e-mail-by-e-mail review.  *See* Exhibit B to Doc. 77.  As a result of this review, Lockheed concluded that by making redactions, additional documents could be produced. Lockheed identified these redacted documents in its Fifth Privilege Log.  *See, e.g.,* Fifth Privilege Log nos. 230-33, 349, 400, 407, 409, 411, 572.  According to SGD, 105 redacted documents were produced.  *See* Doc. 79, at 2.  Lockheed's review also resulted in another 17 documents being produced without redactions.  *Id.*

After reading Lockheed's Supplemental Response (Doc. 77), I recommended in a second memo to counsel that SGD focus its then-forthcoming Reply on documents for which Lockheed was claiming attorney-client privilege, work-product immunity, or both. I stated that I was not inclined to recommend that further document production, document descriptions, or in camera review occur because of the following document descriptions: LMC Proprietary Information, Boeing Proprietary Information, Relevance, Placeholder, or Export-Controlled Information.

In the same memo I stated that it seemed likely that the documents in dispute had been narrowed.  I requested that SGD's Reply identify (1) the number of each document in Lockheed's Fifth Privilege Log that remained in dispute and (2) as to each listed document, that SGD list the reasons that SGD contended Lockheed's privilege claim(s) were insufficient under Rule 26(b)(5).

With scattered exceptions, SGD's Reply did not list the specific documents to which SGD was objecting.  Instead, SGD's Reply (Doc. 79) provided only examples of what it perceived as deficiencies in Lockheed's Fifth Privilege Log.  From these examples, SGD extrapolated global objections to large blocks of Lockheed's Fifth Log.  By failing to provide a document-by-document list of objections, SGD failed to identify (and perhaps did not clearly think about) its privilege objections as well as the privilege descriptions to which it had no objection.

One of the virtues of privilege logs is that they force parties to think about the correctness of their privilege claims.  The same is true of a list of objections to a privilege log.  A detailed list forces a party who is objecting to think about the reasonableness of the party's objections and to drop objections that cannot be defended.

In a third memo to counsel on April 10, 2013, I informed SGD that its Reply was unacceptable.  I directed SGD to supplement its Reply by April 15, 2013 by identifying the number of each document in Lockheed's Fifth Privilege Log that remained in dispute and to state as to each listed document the reasons that SGD contends Lockheed's privilege claim(s) are insufficient under Rule 26(b)(5).

On April 15, 2013, SGD filed its Supplemental Reply (Doc. 82).  In its supplemental filing, SGD added detail to its objections and withdrew some of the objections.  SGD also supplemented its objections with an April 15, 2013 e-mail to me and Lockheed's counsel that clarified and further explained SGD's remaining objections.

SGD's Supplemental Reply included as Exhibit A a document-by-document list of SGD's objections.  By my count, SGD's Exhibit A listed 306 documents as Not Contested and listed another 163 as having been disclosed.[3]

**6.    SGD's Objections**

SGD's objections fall into seven categories:

---

[3] SGD listed the Not Contested documents with the code "NC" and the disclosed documents with the code "D."

9

①     Attorney-client privilege claims are made for which an attorney is not identified as a party to the document. *See* Doc. 79, at 4-5.

②     Attorney-client privilege claims are made for which adequate detail is not provided. *Id.* at 5-7.

③     Work-product claims are made for which adequate detail is not provided. *Id.* at 7-9.

④     The Fifth Log includes references to "LMC Proprietary Documents," which is not a privilege claim. SGD therefore asks that this notation be removed from the Log. *Id.* at 9.

⑤     Attorney-client privilege claims for e-mail attachments are made that do not provide enough detail. *Id.* at 9-10.

⑥     Documents are identified as being withheld on Relevance grounds. *Id.* at 10-11. According to SGD, not enough information is provided to understand why these documents are not within the scope of discovery. *Id.*

⑦     SGD believes many of the documents that Lockheed produced with redactions contain overly broad redactions. *Id.* at 11-12.

⑧     Three documents described as Placeholders have not been produced. *See* Ex. A (nos. 355, 388-89) to Doc. 82.

**7. Analysis**

    **A.     SGD's non-privilege objections and concerns.**

The notations in Lockheed's Fifth Privilege Log regarding Boeing Proprietary Information, Toshiba Proprietary Information, Export-Control Information, LMC Proprietary Information, Placeholder Documents, and Relevance are neither privilege nor work-product claims and are therefore not subject to Rule 26(b)(5).

The notations for Boeing and Toshiba Proprietary Information identify documents that Lockheed says it cannot release without Boeing and Toshiba's permission. On the Boeing documents, SGD has not challenged Lockheed's position. Instead, SGD is

negotiating with Boeing to obtain Boeing's permission to obtain the documents.  What is happening regarding the Toshiba Proprietary Information is not explained in the briefs.  In any event, because neither the Boeing nor Toshiba Proprietary Information entries involve a dispute about Rule 26(b)(5) detail or the sufficiency of a privilege claim, these matters are outside the scope of the matters on which I was appointed to report.

Likewise, the notations identifying documents as LMC Proprietary Information do not involve a privilege or work-product claim that requires a recommendation or findings.  Lockheed has represented that no documents have been withheld because of the designation LMC Proprietary Information.  *See* Lockheed's Supplemental Response (Doc. 77), at 11.  A genuine discovery dispute on this issue does not therefore exist.

Matters regarding documents identified by Lockheed as Export-Control Information are resolved by paragraph 5 of the Court's Protective Order (Doc. 22).

The Placeholder Documents involve three documents (nos. 355, 388, and 389).  Technology difficulties have prevented Lockheed from converting these Placeholder Documents to a readable format.  Lockheed does not claim privilege on these documents and represents that it is continuing to work on solving the technology problem.  *See* Doc. 77, at 15.  A privilege issue for me to address is not presented by the Placeholder Documents.

The final category of nonprivileged documents addressed in the parties' briefing is the category that Lockheed marked Relevance.  According to Lockheed, this means that the documents are irrelevant to this case.  These documents were included in the initial spreadsheet prepared by Lockheed's document vendor.  After Lockheed reviewed the documents and realized they were irrelevant, it refused to produce them.  But to avoid the confusion that might have occurred from simply deleting the documents from its Privilege Logs, Lockheed continued to list them with the Relevance notation.  These Relevance documents do not raise a privilege issue that requires findings or a recommendation.  SGD is free to pursue production of all potentially relevant documents by normal means.  No authority has been cited, and I am aware of none, that requires

1    Rule 26(b)(5) descriptions for non-privileged documents mistakenly included in a

2    privilege log.  Requiring Lockheed to provide such information when it claims no

3    privilege would unreasonably burden Lockheed.

4           Moreover, although SGD challenges Lockheed's Relevance notations in SGD's

5    briefing, SGD has stated that the documents withheld on relevance grounds are "Not

6    Contested."  *See, e.g.,* entries 548-71 in Ex. A to Doc. 82.  SGD has not explained this

7    apparent inconsistency.

8           In summary, I find that the notations in Lockheed's Privilege Logs regarding the

9    following matters do not cover issues regarding Rule 26(b)(5):  Boeing Proprietary

10   Information, Toshiba Proprietary Information, Export-Control Information, Placeholder

11   Documents, and Relevance.  As such, Lockheed is not required to provide privilege

12   descriptions for these documents.

13          **B.     Lockheed did not waive its privilege claims.**

14          Citing *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408

15   F.3d 1142 (9th Cir. 2005), SGD argues that Boeing has waived its attorney-client

16   privilege and work-product claims.  SGD points out that nine months have been spent

17   debating privilege issues; that Lockheed has filed five versions of its privilege log; and

18   that Lockheed has dropped its privilege claims on 266 documents that have been

19   produced.  *See* SGD's Reply (Doc. 79) at 1-3, 12-13.

20          In large-volume document cases like this, it is not unusual for the privilege

21   proponent to revise the details of its privilege log.  Rule 26(b)(5) is deliberately imprecise

22   on how much detail is required for privilege descriptions.  *See Burlington,* 408 F.3d at

23   1147-48 (explaining that the notice required by Rule 26(b)(5) is "explicitly left

24   indeterminate"); 8 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE

25   § 2016.1 (3d ed. 2012) (stating that the Rule was "consciously not precise").  The

26   required detail is decided case by case.  *See Burlington*, 408 F.3d at 1149.

27          Parties are expected to confer on privilege and other discovery disputes and

28   attempt to resolve their differences.  That was done in this case.  SGD articulated its

objections.  Lockheed in turn evaluated its privilege claims, sometimes dropped privilege claims, sometimes produced documents, and other times provided more detail in a revised privilege log.  This is what is expected in privilege disputes.  On the complex facts of this case involving technical engineering issues, foreign-language issues, Japanese Defense Ministry issues, special requirements under export-control laws, and overseas clients, it is not unusual that time has passed and that Lockheed's privilege claims have evolved.  *Cf.* WRIGHT, *supra* § 2016.1 ("An initial response may lack details that the responding party should add if the other side challenges a privilege designation.  More information still may be necessary if the matter is presented to the judge for resolution.").

*Burlington* does not support waiver, but it does provide a useful comparison.  Five months passed before the defendant in *Burlington* served any kind of privilege log; the documents were relatively easy to assemble for production because many had been produced in an earlier case; and the facts suggested that the defendant was engaging in gamesmanship by deleting documents that the defendant had originally listed in its privilege log.  Lockheed by contrast promptly produced a privilege log and engaged in a meet-and-confer process that led to documents being produced, some privilege claims being withdrawn, and details added to explain privilege claims that were not withdrawn. *Cf. Phillips,* 2013 WL 1333790, at *21 (applying *Burlington* and rejecting plaintiff's argument for waiver where the case involved a huge number of documents; the defendant attempted to address the deficiencies asserted by plaintiff by providing supplemental privilege logs; and the document production overall was anything but "unusually easy").

In sum, I find that Lockheed proceeded in good faith.  I also find that SGD was to some extent overbroad in asserting its privilege objections as evidenced by the fact that SGD has dropped some of its objections and has only recently added new details to explain the basis for its objections.  In addition, the documents that I reviewed confidentially did not support SGD's objections, and SGD complicated matters by

demanding Rule 26(b)(5) details for Relevance notations that did not involve a privilege or work-product claim.

### C.   Confidential (in camera) reviews by special master.

In connection with its Fifth Privilege Log, Lockheed produced three redacted documents.  Each document consisted of an e-mail string.  SGD asked me to review these three e-mail strings to assess the propriety of Lockheed's redactions.  The documents are described in entries 50, 111, and 341 in Lockheed's Fifth Privilege Log.  SGD provided me with copies of the three redacted documents.  Lockheed provided me with clean copies of the three documents without redactions.  For the reasons explained below, I find that Lockheed's redactions were fair and confined to material that was either attorney-client privileged or protected by work-product immunity.

### 1.   Document 50

Document 50 is the first document in Lockheed's Fifth Privilege Log for which attorney-client privilege or work-product immunity is claimed.  Lockheed's description of the document, which articulates the basis for its privilege claim reads as follows:

> Redacted request for legal assistance from Richard Udicious
> to Barry Hennegan, Esq. re strategy for potential litigation
> and communication made in anticipation of litigation

Document 50 is an e-mail string that includes five e-mails exchanged on April 13, 2011.  Three of the e-mails were produced for SGD.  Two were redacted in their entirety.  The earliest of the two redacted e-mails (showing a time of 3:50 p.m.) is an e-mail from a Lockheed employee (Richard Udicious) to Barry Hennegan, a Lockheed attorney.  Other Lockheed employees are also included in the To-Line to attorney Hennegan.  The text of Udicious' e-mail makes comments regarding potential litigation with Toshiba and requests Mr. Hennegan's advice on responding to Toshiba.  The redacted e-mail is clearly a client communication seeking legal advice from Lockheed's attorney and was properly redacted.

The second e-mail that was deleted was an e-mail sent later that same day, at 6:33 p.m. This 6:33 p.m. e-mail concerns preparing a response to a Toshiba e-mail threatening to terminate Lockheed's contract and assess damages. Lockheed produced the Toshiba e-mail without redactions. The redacted 6:33 p.m. e-mail is between Lockheed employees. It does not include Mr. Hennegan. Communications between employees do not qualify for attorney-client privilege. *See Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379, 381-82 (D. Ariz. 2010) (finding under Arizona law that communications between non-lawyer employees were not covered by the attorney-client privilege). The parties seem to agree that Arizona law applies on the privilege issue. *See* Lockheed's Supp. Response (Doc. 77), at 9 n.3 (noting that Lockheed and SGD's contract is governed by Arizona law).

Although not protected by Arizona's attorney-client privilege, the redacted e-mail between Lockheed's employees was prepared in response to Toshiba's anticipated termination of Lockheed's contract and the risk of litigation that that termination created. The employee e-mail was also in furtherance of Mr. Hennegan's role in providing advice on responding to Toshiba. In this setting, the 6:33 p.m. e-mail is protected by the work-product doctrine. *See Bickler,* 266 F.R.D. at 383 (finding that communications between employees were in anticipation of litigation (rather than ordinary business communications) and were entitled to work-product protection).

## 2.    Document 111

Document 111 is a string of e-mails generated on various dates beginning on October 27, 2010 and continuing through November 9, 2010. Two of the e-mails that were sent on November 9 were redacted in their entirety. The remaining e-mails were produced for SGD without redactions.

The description in Lockheed's Fifth Privilege Log of document 111 reads as follows:

> Redacted email from Richard Udicious to Mike Aspenson re
> strategy for preparing for potential litigation and redacted
> duplicate email (LMC00046655) from Mike Aspenson to

> James Quinn and Barry Hennegan, Esq. also sent to Janet
> Adamo, Robert Robinson, Richard Udicious, and Susan
> Starks re strategy for potential litigation re Telecon with LM
> Goodyear regarding SGD request for payments (Marked
> LMC Proprietary Information)

The two redacted e-mails concern Lockheed's response to e-mails from SGD that suggested that SGD would begin litigation if it was not paid what SGD believed it was owed by Lockheed. The first e-mail that was deleted by redaction is an e-mail sent at 7:55 a.m. by a Lockheed employee to Lockheed attorney Hennegan. The subject of the e-mail concerns preparing for anticipated litigation. The communication is a client-to-attorney communication in furtherance of obtaining Mr. Hennegan's legal advice. The e-mail is protected by the attorney-client privilege.

The second redacted e-mail in document 111 is a communication by one Lockheed employee to other Lockheed employees. As a communication between non-lawyer employees, the e-mail is not protected by the attorney-client privilege. *See Bickler*, 266 F.R.D. at 381-82. But the e-mail does qualify for work-product protection. The e-mail concerns responding to SGD's e-mail threatening litigation and is in furtherance of preparing a response or approach to SGD's litigation threat on which Lockheed's employees had requested Mr. Hennegan's legal advice.

### 3.     Document 341

Document 341 is another e-mail string. The e-mails span March 17, 2008 to September 22, 2008. The description of document 341 in Lockheed's Fifth Privilege Log reads as follows:

> Redacted email from Rock Groupe to Barry Hennegan, Esq.
> re request for legal advice, and email from Rock Groupe
> which includes contents of communications from Barry
> Hennegan, Esq. to Rock Groupe

Two of the e-mails in document 341 were deleted in their entirety by redaction. The first deletion is a 12:40 p.m. e-mail from a Lockheed employee named Rock Groupe to Lockheed attorney Hennegan. In the e-mail Mr. Groupe requests Mr. Hennegan's advice on confidentiality agreements. This is a client-to-lawyer communication seeking legal advice and is protected by the attorney-client privilege.

1    The second e-mail that Lockheed deleted by redaction was an e-mail from Mr.

2   Groupe to himself in which he summarized the advice he received from Mr. Hennegan.

3   This too is a document containing advice from the client's attorney and is protected by

4   the attorney-client privilege.

5    SGD makes the point that Mr. Groupe later sent a non-privileged e-mail to SGD

6   asking various questions.  Left attached to this e-mail were the two privileged e-mails

7   that Lockheed redacted from document 341.  Why Mr. Groupe left the privileged

8   communications involving Mr. Hennegan attached is unexplained.  But it seems likely

9   that this was an inadvertent disclosure by Mr. Groupe, a non-lawyer.  Lockheed did not

10   act in bad faith by attempting to preserve the confidentiality of its communications with

11   attorney Hennegan through a redaction of e-mails that SGD already had.  To the contrary,

12   it was appropriate for Lockheed to assert attorney-client confidentiality for privileged e-

13   mails that were likely produced inadvertently by a nonlawyer.

14    SGD remains free to argue waiver as to the privileged communications that Mr.

15   Groupe sent to SGD.

16           **4.    Other documents produced for confidential review**

17    In addition to the documents discussed above, Lockheed produced ten documents

18   that I requested as a sample of the documents that are in dispute.  One of the ten

19   documents was document 341, which is discussed in Part 7(C)(3) above.

20    Another document in the ten is a document (no. 323) that has since been produced

21   for SGD.  A third document (no. 650) is a Toshiba document that is conspicuously

22   marked by Toshiba to state that it is not to be produced without Toshiba's consent.

23   Lockheed has not claimed privilege on this document but did refuse to produce the

24   document without Toshiba's consent.  As explained above in Part 7(A), disputes

25   regarding Toshiba Proprietary Information do not involve privilege issues governed by

26   Rule 26(b)(5).  SGD is free to meet and confer with Lockheed's counsel on the Toshiba

27   document and pursue an order compelling production if appropriate.

28

1    The remaining seven documents (nos. 197, 268, 274, 289, 312, 390, and 572)

2    involve claims of attorney-client privilege, work-product protection, or both.  I have

3    reviewed these documents and am satisfied that they qualify for either attorney-client

4    privilege, work-product immunity, or both.  Moreover, after these documents were

5    produced for my confidential review, SGD revised its objections to state that Lockheed's

6    privilege claims for document nos. 197, 268, 274, 289, and 572 were Not Contested.  *See*

7    Ex. A to Doc. 82.

8    **D.    Confusion caused by Lockheed's use of *and/or* privilege claims**

9    Throughout its Privilege Logs, Lockheed use the words "Attorney-Client and/or

10   Work Product Privilege."  *See, e.g.,* Lockheed's Fifth Privilege Log nos. 287-94.  The

11   words *and/or* are legalese that careful writers avoid.  The words are often ambiguous.

12   In this case, Lockheed's use of *and/or* has created ambiguities.  Many of the

13   documents in Lockheed's e-mail strings include e-mail in which some of the e-mails

14   include attorney-client communications while others do not.  Use of the *and/or*

15   expression makes it unclear for a given e-mail whether attorney-client privilege, work-

16   product protection, or both are claimed.

17   More than 90% of the entries in Lockheed's Fifth Privilege Log that SGD disputes

18   involve *and/or* descriptions.  *See* Exhibit A (listing SGD's objections).  Requiring

19   Lockheed to separately identify, e-mail-by-e-mail, whether attorney-client privilege,

20   work-product immunity, or both is claimed, would facilitate a ruling on the validity of

21   Lockheed's privilege claims.  But even with this clarification, it would not be possible to

22   make a fully informed ruling on Lockheed's privilege claims.

23   A major difficulty in resolving SGD's objections is that many of the objections

24   concern privilege claims that seem from Lockheed's descriptions to involve dual-purpose

25   documents—that is, documents that may have been prepared both for business purposes

26   and in anticipation of litigation.  *See* Part 2 *supra* (describing dual-purpose documents

27   and relevant case law).  Most of SGD's objections assert that the document appears to be

28   one that was prepared "primarily [for a] business purpose."  *See* Exhibit A.  From the

information that Lockheed has currently provided it is impossible to tell, under relevant case law regarding dual-purpose documents, if these documents were prepared primarily for business or in anticipation of litigation.

**8.     Lockheed's Fifth Privilege Log Satisfies Rule 26(b)(5)**

Although Lockheed's descriptions of the basis for its privilege claims are not sufficient to make a confident ruling on whether the privilege claims are valid, the descriptions are detailed enough to satisfy Rule 26(b)(5).  *See Phillips*, 2013 WL 1333790, at \*19-21 (finding Rule 26(b)(5) satisfied even though further detail might be required from the defendant and even though in camera review was needed and stating: "the outcome of [in camera review] will provide direction and further guidance to the parties as to how the court evaluates the attorney-client privilege and work product doctrine assertions.").  Lockheed has therefore made a prima facie showing needed for its privilege claims.  *See Grand Canyon Trust v. U.S. Bureau of Reclamation*, 2010 WL 457397, at \*2 (D. Ariz. Feb. 5, 2010) (finding that defendant's privilege descriptions made a prima facie showing of privilege and ordering defendant to produce the 27 disputed documents for in camera review).

**9.     Recommendation**

As to the documents listed in Exhibit A, I conclude that at least some in camera review is needed to confidently determine the validity of Lockheed's privilege and work-product claims.  To review all 176 documents listed in Exhibit A would be an undue burden, especially when many of the documents involve e-mail strings that include multiple documents.  I recommend that SGD and Lockheed each identify ten documents to be submitted for in camera review.

To facilitate in camera review of these 20-documents, I recommend that Lockheed be ordered to (1) delete all references to *and/or* in its privilege claims and to state document-by-document, as to the 20-document sample, whether attorney-client privilege, work-product protection, or both are claimed, (2) describe why documents in the 20-document sample that SGD claims are primarily for business qualify for attorney-client

privilege or work-product protection, and (3) describe why a privilege exists for any document in the 20-document sample that SGD claims was or may have been sent to a third party.  In this regard, Lockheed should explain, by declaration, Sumitomo's role and why Lockheed maintains that documents sent to or through Sumitomo remain entitled to attorney-client privilege or work-product protection.

I anticipate that the results of the in camera review will provide guidance on appropriate rulings (or recommendations) and whether further remedies (e.g., additional in camera review or evidentiary declarations from Lockheed) are needed.

I also recommend that the Court enter an order finding that (1) Lockheed's Fifth Privilege Log complies with Fed. R. Civ. P. 26(b)(5) and (2) Lockheed has made a prima facie showing of attorney-client privilege or work-product protection for the documents so designated in its Fifth Privilege Log.  I further recommend that the Court find that (1) Lockheed did not waive its attorney-client privilege or work-product claims, (2) the 20-document sample of documents be produced for in camera review (and rulings) by the Court (or recommendations by me as Special Master), and (3) the parties each be responsible for paying 50% of my fees to date.

If the Court directs me to conduct the in camera review, I envision recommending that my fees be paid in inverse proportion to the validity of the parties' positions.  Thus, if SGD's objections are largely invalid, as in the past, I envision recommending that all or most of my fees for the in camera review be paid by SGD.

Dated: April 17, 2013.

   *s/ Richard G. Himelrick*
Richard G. Himelrick
TIFFANY & BOSCO, P.A
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016

*Special Master*

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on April 17, 2013, I electronically filed the foregoing with the

3  Clerk of the Court using the CM/ECF system which will send notification of such filing

4  to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify

5  that I have mailed the foregoing document or paper via the United States Postal Service

6  to the non-CM/ECF participants indicated on the Manual Notice list.

7      I certify under penalty of perjury under the laws of the United States of America

8  that the foregoing is true and correct.

9

10                    _s/ Shelley Boettge_
                     Shelley Boettge

11

12

13  543707

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28